Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for the Appellant, Mr. Prado-Medina. Mr. Prado-Medina was convicted of being a felon in possession of a firearm. And the first argument I would like to turn to is his contention that the district court should not have admitted evidence that prior to the alleged possession of a firearm, he had engaged in a drug sale. Mr. Prado-Medina was charged with possession of a firearm. The incident occurred when he was walking along the street one night on a sidewalk and two officers driving by in a car saw him. They both looked at him. Their attention was drawn to him. One of them saw him allegedly throw something. The other officer did not see him throw anything. They stopped him. One of the officers later retrieved a gun that was inside a fence. Three months later after this arrest, Mr. Prado-Medina allegedly made a statement to an ATF officer that he had been on the street and the officer said, well, he denied that he had a gun. And the officer said, well, what were you doing on the street so late at night? And Mr. Prado-Medina said, well, I just sold cocaine to a PISA, which is someone on the street. And the police planted the gun on him because they were angry at him. Now, in the closing argument, the government told the jury that it could infer from this drug sale that Mr. Prado-Medina had possessed the gun. In essence, the government told the jury you can convict Mr. Prado-Medina of gun possession based on the fact that he admitted he had previously engaged in a drug sale. So it was extremely prejudicial. Mr. Prado-Medina contends that this evidence was inadmissible. The district court offered three bases for admitting the evidence. First, the district court said, well, it's flesh on the skeletal circumstances of the arrest. And Mr. Prado-Medina contends that that is an inaccurate statement. First of all, if there had been a drug sale, it was completed long before Mr. Prado-Medina was walking on the sidewalk. When he was found on the sidewalk, he had no drugs, he had no money, proceeds from the drug sale, he had no paraphernalia of a drug sale, he had no pay and owe sheets, he had nothing that indicated he had ever been in a drug sale. So if he had been involved in a drug sale, presumably he'd gone somewhere, disposed of that, and then was walking along the street in a completely separate act. And in addition, the statement that was made to the ATF officer was made three months after the arrest, so it couldn't have provided any flesh on the circumstances of the arrest to the arresting officers. Therefore, there was no basis for admitting the statement on that ground. The judge also said, well, there's a sufficient basis in judicial precedent for a link between drugs and guns. And the government basically offered two cases, the Butcher case, which says that evidence of possession of illegal drugs is relevant to determining whether a defendant knowingly possessed a weapon found in close proximity to drugs. The Thomas case says evidence of drug trafficking in sufficient close proximity, temporally and physically, to be relevant to proving that he knowingly possessed a weapon. So in all those cases where you've got a connection between drugs and guns, there has to be a sufficiently close temporal and physical proximity. In this case, there was clearly none. There was a separation between the alleged drug sale, it was completed, it was over, it was somewhere else, and Mr. Prada Medina was walking along the street with no indicia of any drug dealing. The judge also then said that it's circumstantial evidence of knowledge. And this goes to the test under 404 where you're talking about prior bad acts, which this clearly is, and it's only admissible if it fits the criteria of Section 404. And one of the criteria that this Court has construed is that where knowledge and intent are an issue, the prior act must be similar to the instant offense. This Court was dealing with this earlier in the Pilgrim case where you've got someone crossing the border in a car that has drugs in the ceiling, and then the next time they're crossing the border in a car that has drugs in the trunk. And those are relatively similar events. Here you've got a drug sale, which is completed and over, and then you've got a gun possession. So there's no similarity between the two events, which you have to have for the purposes for which the Court admitted this evidence. Therefore, there was no basis. Well, is that true for motive? I mean, if, for example, there had been a confession that he was a member of a gang that was in a war with another gang, that might not be the same crime, but it might provide a motive. Does it have to be similar when motive is the issue? You know, Your Honor, I'm not sure about that. That was a question I was asking myself when I was looking over the cases. I think knowledge and intent are similar to motive, but in this case there's a factual issue with respect to motive because the motive that you carry the gun when you have it is to protect the drugs or to protect the cash that you have from the drugs. Or to protect yourself from the other people who are involved in the same way of life. Is it as limited that if you're a drug dealer, you only carry a gun at the moment you're involved in the sale? Well, I think in this case Mr. Prada-Medina said he sold it to a pizza, so it was a person on the street. So there's no indication that he would be worried about retribution from someone that he just happened to come into the street. And he didn't have the guns. He didn't have the drugs. He had no reason to protect himself from them. And so I don't think that motive is a sufficient enough reason to admit the evidence. But another point that we're making is that even if you admit evidence of a prior bad act, even if you find that it qualifies under these criteria, you then have to go to the weighing process under Rule 403, which the district court did not do. Well, it didn't do it explicitly, but it was argued to the court, right? I mean, the argument was made right there in front of the judge, and the judge listened and then said, well, now I'm going to decide X. So don't we have to assume that the judge paid attention to the weighing argument and did something? Well, the judge doesn't tell us that the judge did. It's not explicit on the record. And clearly, this is an extraordinarily prejudicial statement. When the government tells the jury, you can convict him of the instant offense of gun possession just because he said that previously he had engaged in a drug sale. You can infer from that drug sale, that purported drug sale, that he possessed a gun. Well, wasn't there a balancing to the extent that we note that the government excluded some of the ATF evidence? The court excluded. I'm sorry, Alan. Can't we assume that there was a balancing by the fact that the court excluded part of the ATF evidence? The court did make some statements that it was excluding part of the evidence. Oh, it did. It excluded part of the – the government wanted to put it all in, and the government said, no, you can only put in this much. Am I – are we communicating? Yes. No, I understand what you're saying. Sure. Okay. But I just don't think that the weighing process is explicit on the record. And, you know, some of the recent cases, although in another context – Okay, I understand that argument, but my question to you is, cannot we infer that there was a weighing to the extent that the government, in fact, separated out what it would permit to be admitted and what it would not? Well, we would argue that it's not explicit, so we don't know what weighing criteria went into it.  I hear you. Now, the government also offers another reason, which was not – the district court said it didn't need to address, which was the inextricably intertwined issue. But that rule only applies to when a defendant is indicted for less than all acts in a single criminal transaction. And as I discussed, this was not a single criminal transaction. If there had been a drug sale, it was over and completed long before Mr. Prada Medina was found walking along the sidewalk by the officers. So if there are no other questions on that issue, I'd like to turn to the – I have only one other question on that, and that is whether it makes any difference to your argument that the court gave a limiting instruction, saying that the only crime they were to consider as such was the crime indicted for. I'm paraphrasing. But, well, notwithstanding the limited instruction, the government told the jury, you can infer from this evidence that he committed this crime. So even if they were considering it for a limited purpose, they were told they could infer from it that he was guilty of the crime with which he was charged. And I'd also like to turn to the second argument we're making, that of insufficiency of the evidence, because in a way it ties in with the previous argument that we've been making. Mr. Prada Medina was walking along the street. The evidence presented by the officers was that he, with a flicking and throwing motion, he managed to fling a gun through wrought iron bars of a fence without hitting the fence and flying through the fence. And at the time he was moving, there was also a number of contradictions by the testimony of the government's witnesses. There was also some contradiction between the government witnesses and the contemporaneous reports. But isn't that what juries decide? The contradictions, yes. I think the reason that I'm emphasizing some of the contradictions is to highlight the fact that what we're arguing is that it was an impossibility. It was an impossibility for the gun to have gone through while Mr. Prada Medina was walking, for him to have just flicked the gun and it miraculously landed through the bars and went through and landed on the grass without making a noise, without hitting any of the bars. And I think that the other evidence, which in fact the jury could weigh... Well, and whether it actually happened or not, was a jury question. There were witnesses who said it happened that way. Well, there was one witness who said he saw Mr. Prada Medina throw something and later recovered the gun, and that was the officer. Our contention is that it would be miraculous for the gun to have actually gone through the bars when Mr. Prada Medina didn't stop and throw it. Well, that sounds like a jury argument to me. I mean, there was a testimony that the width of the railings of the fence was only an inch and a half, and the gun was two inches wide. I mean, there was none of that, was there? No, unfortunately there was not, Your Honor. But our argument is we presented... The jury had before it the gun, and the jury had before it the pictures of the fence, so the jury could make a common-sense determination or should have made the common-sense determination that it would be impossible for the gun to have been thrown without looking at it and just with a flicking motion from behind to have actually sailed through the bars without hitting the metal. The other points that I was going to make about the contradictions in the testimony, the government's evidence. For example, Officer Brown testified that the reason there were no fingerprints on the gun was because Mr. Prada Medina was wearing gloves, but the officers decided not to book the gloves. There was testimony about the distance from which the officers saw Mr. Prada Medina, which varied from 40 feet to a couple of hundred feet. There was a difference in testimony as to when Mr. Brown turned on the spotlight, whether it was before or after they saw the throwing. There was a difference in whether Mr. Prada Medina actually saw the officers, turned back and saw the officers before the alleged throwing. There was a difference in terms of when Mr. Brown told Officer Tamati that he had seen Mr. Prada Medina throw an object, and Officer Tamati did not see the object thrown, even though he said that he was watching Mr. Prada Medina. There was a discrepancy between the testimony and the effort in his reports, and there's also, as you see from the pictures that we introduced in the excerpts of record, that cars were parked bumper to bumper, and the officers were sitting in a car so they would have had to look through cars to see what was going on. So the point that I wanted to make, though, is that even if the Court did not agree with our argument that it was an impossibility for things to have occurred as they did and the evidence was contradictory and inconsistent regarding what happened, it still is relevant to the first point as well because that makes all the more prejudicial the fact that the government told the jury you can convict him based upon a statement that he had engaged in a drug deal, because, in fact, all the evidence was weak and inconsistent and contradictory. But the jury was told it doesn't matter, you can convict him just because he said he had been engaged in a drug deal. And I wanted to, unless there's no further questions on that issue, I wanted to turn just very briefly to the supervised release conditions regarding gangs. You've got Soltero on your side on that one. After Soltero, I think the disruptive group certainly has to be stricken, but Soltero is distinguishable in two ways. The two of the conditions that we've challenged have to do with not associating with members of a gang and not being in a location where gang members congregate. In Soltero, the Soltero conditions were materially different because in those conditions the word known was inserted. You can't be associated with a known member of a gang, you can't be in a known location where there's a congregation. The Soltero court said it requires knowledge and therefore it's acceptable. The conditions in this case did not require that knowledge. Counsel, I gather you conceded, based on DUPAS, you conceded the amount of drug to be decided, I mean the amount of expense to be decided by a probation officer? Yes, Your Honor. I have one more question. I have a note here that it's at page 16 of your opening brief. You have what I understood to be a request to brief the reasonableness of the 60-month sentence later. Can you do that? I mean, to sort of say, well, here's my brief on appeal and I'm raising four issues, but I might want to raise another one later? I didn't really follow that. Well, it's hard to know what's going to happen with Cardi and Zavala. Well, it is hard to know, but if you don't raise an argument, is it going to be preserved? I mean, let's say that case comes out in a month or two months or whenever it comes out. What are we supposed to do with this sort of non-argument? I guess I don't understand whether it's even preserved for our consideration. Well, there are cases where a new case comes out and we've made a motion to file a supplemental brief based on the new case. So I assume if Cardi and Zavala came down and we felt there was an argument that could be made based upon those cases, we would ask to file something supplemental and the court could decide whether or not to accept it at that point. Okay. But you're not presently making an argument regarding the reasonableness of the sentence? Not at this point, Your Honor. Okay. Thank you. Thank you, counsel. You have some reserved time. Thank you. We'll hear from the government. Good morning, Your Honors, and may it please the Court. Chris Louie on behalf of the United States. I'd like to begin with the issue concerning the admission of defendant's statement. I think all of the defense's arguments concerning the admission of defendant's statement share erroneous characterizations of the facts. The defense is arguing throughout its brief on this issue that the drug trafficking and gun possession are not physically or temporally related in this case. That's at odds with the content of defendant's statement. Defendant said he had just sold crack cocaine to a pizza or a paisa on the street and that's when he encountered the police. Now, the defense is speculating that because the defendant didn't, there's no evidence in the record that the defendant had P&O sheets, drugs, other paraphernalia on him, that he could not have, that he must have gone somewhere else in that intervening time. But that's not the content of his statement. His statement was that he had just sold crack cocaine to someone on the street and then he encountered the police. So the defense is asking the court to speculate now that there is some temporal separation that is not suggested by the content of the statement itself. So there is a temporal relationship based on the statement itself. Defendant would have had to possess the gun at the time that he made this drug sale, this self-asserted or self-admitted drug sale, which was right before he encountered the officers. There's also a physical relationship here because the gun was recovered in the area where defendant said he was walking away from that drug deal. The defense has also argued that there's no evidence that the defendant was actually trafficking in drugs and thus there's no connection between the firearm and drug trafficking. So that's not the case because the statement itself, again, is the evidence of drug trafficking. He said he had just completed this crack cocaine sale. So once those errors are done away with, the result, and the facts are looked at based on the statement itself, the district court did not err in admitting the statement. There was no problem with its admission under either Rule 404B or on the alternative ground under the inextricably intertwined evidence doctrine. The statement was admissible as evidence of motive. Judge Graber raised the point as to whether similarity is necessary under 404B for motive. And I don't think with respect to motive evidence, in most cases when you're going to have motive evidence, it's not going to be similar to the subsequent crime. If a person engages in a drug deal, the drug deal goes bad and he goes to retaliate against the other party to the drug deal and he goes in his arm, that, again, it's a situation where there's evidence that's probative of motive, but it's not similar to the charge of conduct. On the issue of Rule 403, I think the record does show that the district court was mindful of prejudice in ruling on all of the issues raised in the defense's motion in limine. And the defense's motion in limine was based on Rule 403. On that point, I'd just like to note that Judge O'Scanlan's opinion in U.S. v. Verdusco, which is 373 F. 3rd 1022, that at footnote 2, which discusses a somewhat similar circumstance, it notes that while a more explicit statement by the court regarding its Rule 403 analysis might have been helpful, the record makes it clear that the question of prejudice figured crucially in the court's mind. That's a case that's not cited in the government's brief, but I wanted to raise that based on something that the defense put in its reply brief. If the court has no further questions. Counsel, on that point, you should provide counsel and the panel with gum sheet copies of that citation, so we'll have it for the record. Thank you. You may do so before you leave today. I will do that, Your Honor. If there are no further questions on the issues concerning the defendant's statement, I will move on. With regard to the sufficiency of the evidence argument raised by the defense, the argument the defendant's making on appeal is not just something that sounds like a trial court argument. It was the argument that was made in the trial court. The argument made in the trial court, made in the district court, was that it was factually impossible for these things to happen. Well, the evidence of trial came in. Officer Brown gave the testimony that he gave about his observations of what the defendant did, and the jury accepted that. And the jury had pictures of what the fence looked like. The jury heard that testimony, saw those pictures, and rejected the defense's argument that it was factually impossible. And it's not factually impossible, because Officer Brown's testimony was that he retrieved the gun from inside the fence. So the only way to accept the defense's contention on this is to make a credibility determination as to what Officer Brown's testimony was. So if there are no questions on that issue, then I'll move to the supervised release issue. Your Honor, with respect to the gang conditions, I believe, and unfortunately it's probably not clear from the government's 28-J letter, which I apologize for, but I believe that it would be appropriate for this Court to remand to the district court for the limited purpose of excising the terms disruptive group from that first gang condition that prohibits association with members of a gang or disruptive group. Based on Soltero. Based on Soltero. What is your response to counsel's argument that the association with gangs condition has to be association with known gangs so that there's some kind of state of mind required that if he just sort of walks up to a baseball game and there happens to be a gang there that he's never heard of. Do you understand what I'm asking? Her argument was that it can't just be association with gangs or gang locations, but it has to be known gangs and known gang locations. I don't believe that it should be a requirement in this case. First of all, the condition specifically names the Vincent Town street gang. And second of all, because this is a condition that prohibits association with members of a street gang. Well, it doesn't. I'm looking at number 11. The defendant shall not associate with any member of any criminal street gang. And then as directed by the probation officer, specifically any member of the Vincent Town street gang. So I guess I'm not sure how you read those two parts together. If you read it as only prohibiting association with the Vincent Town street gang, then counsel's argument goes away because that's very precise. Is that how you read it? No, Your Honor. In terms of the term criminal street gang as used in that condition, what I was getting at, Your Honor, is that the condition prohibits association. So that's not simply incidental contact. That's not showing up at a baseball game and being coincidentally seated among a group of members of some gang other than Vincent Town. This is talking about association, which is something more than simply incidental contact with members of a gang or members of a criminal street gang. Anything else, counsel? No, nothing further, Your Honor. Thank you, counsel. Ms. Young, you have some reserved time. Thank you, Your Honors. I think most of the points that the prosecutor raised were addressed in my previous argument. The one point I did want to clarify was the supervised release gang conditions, and the conditions in Soltero do say the defendant shall not associate with any known member of any criminal street gang, whereas the condition in this case, as Judge Graber pointed out, said the judge shall not associate with any member of any criminal street gang as descriptive group, which we agree has to be stricken, specifically any member of the Vincent Town street gang. And even if the government's argument that it could be clarified because he is now a member of the Vincent Town street gang and presumably knows those members could be accepted, by the time he's out of prison five years from now, the gang membership is fluid and it will have changed, and so it's important to have the fact that those members have to be known to him. And the Soltero court, in fact, relied upon that word in the condition to uphold the condition. So we would say that the condition in this case is unacceptable. All right. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument in the last case of the morning, GERS, Inc., versus Atlantic Mutual Insurance.
judges: O'scannlain, Graber, Gibson